IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02132-RBJ

ALLEN SMITH,

 Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

 Defendant.

---

ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS

---

  This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Allen Smith's application for Supplemental Security Income ("SSI"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision and DENIES Mr. Smith's application (ECF No. 14).

## I. STANDARD OF REVIEW

  A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). To be disabling, a claimant's conditions must be so limiting as to preclude any substantial gainful work for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

1

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final SSA decision, the District Court examines the record and determines whether it contains substantial evidence to support the decision and whether SSA applied correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The District Court's determination of whether the ruling by the Administrative Law Judge ("ALJ") is supported by substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II.   BACKGROUND

### A. Factual Background

Mr. Smith (the claimant) was born in 1975, making him 43 years old on the date of his SSI application. Administrative Record (AR), ECF No. 14 at 26, 239. He suffers from schizoaffective disorder, post-traumatic stress disorder, and other mental and physical ailments. AR 17. He has extreme adverse reactions to cigarette smokers and the smell of cigarette smoke—he gets aggressive, self-isolates, and/or emotionally shuts down. *See, e.g.*, AR 62. He suffers from delusions that people are poisoning his food. AR 63. He claims to have suffered from these disorders and delusions since at least November 2011. AR 239.

Mr. Smith did not complete the seventh grade. AR 18. He had previous work experience as a mill operator and water truck driver, most recently in 2011. AR 26. For the past few years, Mr. Smith has volunteered on and off giving tours of a gold mine. AR 42–43.

Mr. Smith has lived with his girlfriend, Beverly Peper, intermittently for the past six years. AR 57. Mr. Smith has been attending therapy for several years. He has learned coping methods that have improved his functioning. AR 50–51. These include focusing on a stone in his pocket ("grounding"), smelling a perfumed handkerchief to delay adverse reactions to cigarette smoke ("aromatherapy,"), and eating candy when he encounters a trigger ("taste therapy"). AR 54. The therapy and coping mechanisms, as well as prescribed medication that he regularly takes, have improved his functioning, although they have not eliminated his delusions or other symptoms of mental disorders.

### B. Procedural Background

Mr. Smith first applied for SSI benefits in 2013. AR 125. An Administrative Law Judge (ALJ) denied his application after a hearing, *id.*, and the Appeals Council (AC) confirmed denial of SSI benefits on February 1, 2017. AR 147.

The administrative appeal at issue in this case began when Mr. Smith filed another claim for SSI benefits on July 26, 2018. AR 15. After initial denial of his application, he received a hearing before an ALJ on December 5, 2019. AR 34 *et seq.* The ALJ denied Mr. Smith's application on January 7, 2020. AR 15. The AC denied Mr. Smith's request for review on May 19. AR 1. Shortly thereafter, Mr. Smith filed a complaint for judicial review in this Court. ECF No.1.

### C. The 2020 ALJ Decision

The ALJ evaluated the evidence of Mr. Smith's alleged disabilities according to the SSA's standard five-step process. AR 16. At step one, the ALJ found that Mr. Smith had not engaged in substantial gainful activity since the date of his SSI application. AR 17. At step two, the ALJ found the Mr. Smith suffered from five severe impairments: lumbar degenerative disc disease, asthma, allergic rhinitis, schizoaffective disorder, and post-traumatic stress disorder. AR at 18–19.

At step three, the ALJ found that Mr. Smith did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR at 18–19. At this step, the ALJ analyzed four categories of mental impairments (known as the paragraph B criteria) and found that Mr. Smith had moderate limitations in three of the four categories. The ALJ justified his finding of a moderate limitation in "understanding, remembering, or applying information" by balancing testimony and medical evidence of the claimant's limited mental capacity with evidence that he was excited to learn new jobs at his work. AR 18–19. In finding the claimant had a moderate limitation in "interacting with others," the ALJ noted the claimant's semi-regular altercations with smokers and belief that he is being poisoned, but also mentioned the claimant's ability to shop, lead gold mine tours, spend time with others, and engage pleasantly at therapy sessions. AR 19. The ALJ found a moderate limitation in "concentrating, persisting, or maintaining pace" supported by evidence that, while claimant could not count change or balance a checkbook, failed seventh grade, and is triggered by cigarette smoke, the claimant is able to lead gold mine tours twice a week from 10:00 am to 4:30 pm and is engaged and responsive during mental

therapy sessions. *Id.* Finally, the ALJ found no limitation in "adapting or managing oneself" because Mr. Smith reported he could "complete all self-care chores, cook, clean, drive, shop in stores, pay bills and . . . handle[] some stress okay and [] handle some changes in routine for a short time." *Id.*

The ALJ next proceeded to step four where he found that Mr. Smith had the residual functional capacity (RFC) to perform medium work, as defined in 20 CFR 416.967(c), with some additional limitations. AR 20–26. At this step, the ALJ first identified physical and mental impairments that could reasonably be expected to produce Mr. Smith's symptoms. Over three single-spaced pages, the ALJ canvassed Mr. Smith's various conditions. He detailed the plaintiff's challenges and abilities, describing various psychiatric and medical appointments and extensively citing the claimant and his significant other's testimony at the administrative hearing. AR 21–23.

The ALJ then evaluated the intensity, persistence, and limiting effects of Mr. Smith's symptoms. Here, the ALJ found Mr. Smith's testimony "not entirely consistent with medical testimony and other evidence in the record." AR 24. A key issue was the claimant's ability to deal with cigarette smokers and the frequency of resulting altercations. Ms. Peper testified that the claimant could not control himself and had "daily" altercations with smokers, but the claimant himself had told a therapist that altercations with smokers occur only once or twice a month. AR 24(citing AR 59–60, 643). The ALJ seemed to credit the claimant's statements to medical providers and draw the inference that hearing testimony could not be credulously accepted. AR 25. He found the psychological opinion of the state psychologist, Dr. Mark Suyeishi, partially persuasive. *Id.* He found that Dr. Suyeishi's opinions about the claimant's

abilities were consistent with the claimant's professed improvement at deploying coping mechanisms. *Id.* However, Dr. Suyeishi's opinions did not adequately account for Mr. Smith's once- or twice-monthly altercations with smokers and delusions about people poisoning his food. The ALJ believed that these disorders prevented Mr. Smith from working in the food industry or any job requiring more than occasional interaction with supervisors, coworkers, or the public. AR 26. Other than these limitations, however, the ALJ concluded that Mr. Smith could perform medium work. *Id.*

At step five, the ALJ found that Mr. Smith could not perform his previous jobs of mill operator or water truck driver, both of which required more than medium exertion. *Id.* The ALJ did find, however, that the national economy contains sufficient jobs within the claimant's ability to perform. AR 27. According to the ALJ, Mr. Smith could me a machine packager or warehouse worker, which together account for over 450,000 jobs nationally. *Id* The ALJ thus denied Mr. Smith's application for SSI.

Mr. Smith requested review by the Appeals Council. On May 19, 2020, the Appeals Council denied on the request, making the ALJ's decision final. AR 1–4. On July 20, 2020 Mr. Smith filed a timely appeal in this Court. ECF No. 1.

### III.   DISCUSSION

Mr. Smith challenges the ALJ's decision on three grounds. ECF No. 15. First, he contends that the ALJ's determination of Mr. Smith's RFC failed to account for Mr. Smith's paranoia, difficulty staying on task, and inability to comport himself when triggered by cigarette smoke. *Id.* at 6–8. Second, he claims the ALJ improperly discounted Ms. Peper's testimony. *Id.* at 8–10. Finally, he claims the ALJ improperly discredited Mr. Smith's own testimony without

providing a reason. *Id.* at 10–11. I will consider each claim in turn, bearing in mind that the applicable "substantial evidence" threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

### A. The ALJ's Assessment of Mr. Smith's RFC

Mr. Smith contends that the ALJ improperly assessed his mental health limitations in determining his RFC. As the claimant describes it, the ALJ found that Mr. Smith suffered from impairments that included "severe paranoia, hallucinations, delusions and an inability to control his reactions when faced with stressors." ECF No. 15 at 7. A vocational expert (VE) testified that four unexpected absences per month or two to three incidents of "withdraw[ing] completely from the workplace" per month would eliminate the possibility of competitive employment. *Id.* (quoting AR 71). Mr. Smith claims that the ALJ ignored the interaction between these two pieces of evidence. He claims the ALJ "made a legal error" by accepting Mr. Smith's inability to tolerate smokers but "not reflecting that impairment precisely within the RFC." ECF No 17 at 2.

I disagree. The ALJ's written opinion displays consideration of Mr. Smith's cigarette-related impairment. When determining Mr. Smith's RFC, the ALJ partially discounted the opinion of State Psychologist Dr. Suyeishi so that the ALJ could adjust his RFC determination to account for Mr. Smith's cigarette aversion. *See* AR 25–26. He determined that while Mr. Smith could physically perform medium work, his RFC was lower because he could not work in the food service industry (due to his delusions and hallucinations) and could not have regular interactions with others (due to his cigarette aversion). *Id.* at 26. The ALJ did not need to consider the VE's testimony about the impact of three or four absences per month because the

ALJ found that Mr. Smith displayed an improved ability to control his reactions to smokers and only had hostile incidents twice per month. *Id.* at 24. The ALJ did not find, and the claimant did not present, overpowering evidence that Mr. Smith would miss three to four days of work per month. Nonetheless, the ALJ proceeded with "an abundance of caution" to determine whether Mr. Smith could be employed. *Id.* at 27. Even though a VE provided three occupations that Mr. Smith could perform, the ALJ disregarded one position because of possible atmospheric conditions incompatible with Mr. Smith's respiratory sensitivities. *Id.* at 27. Overall, the ALJ's determination of Mr. Smith's RFC was supported by substantial evidence and did not disregard required legal standards.

### B. The ALJ's Consideration of Ms. Peper's Testimony

Mr. Smith's significant other, Ms. Peper, testified at the administrative hearing and submitted a signed letter describing Mr. Smith's impairments. Federal regulations require the ALJ to "consider" such evidence. 20 C.F.R. § 416.920b. Mr. Smith claims that the ALJ merely "acknowledged and summarized Ms. Pepper's [sic] testimony" and then "negate[d]" it by highlighting the contradictions between that testimony and Mr. Smith's own statements about his condition. ECF No. 15 at 9–10. Mr. Smith contends that "considering" evidence requires analysis that is "comprehensible and allows for judicial review." ECF No 17 at 4.

Mr. Smith does not locate his "consideration" standard in the caselaw beyond drawing an unpersuasive parallel between family testimony and medical evidence. *See id.* Federal regulations explicitly state that ALJs are not required to treat non-medical sources like medical ones. 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements [for considering medical opinions and prior

8

administrative medical findings] in this section."). The ALJ's summarization of Ms. Peper's testimony and his decision to credit Mr. Smith's first-person account of his own symptoms do not warrant remand.

### C. The ALJ's Consideration of Mr. Smith's Testimony

Mr. Smith protests that the ALJ "summarily discounted Mr. Smith's testimony with the following boiler plate statement:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

ECF No. 15 at 11 (quoting AR 24). This is incorrect. The ALJ thoroughly considered Mr. Smith's subjective symptom testimony, explained why it was inconsistent with other evidence in the record, and incorporated Mr. Smith's self-described limitations into his determination of Mr. Smith's RFC. *See* AR 18–27. The use of boilerplate language "is problematic only when it appears in the absence of a more thorough analysis." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012)(internal quotation omitted). More thorough analysis appeared here, so the ALJ's treatment of Mr. Smith's testimony does not warrant remand.

### IV.   ORDER

The Court does not doubt that Mr. Smith's medical conditions are serious and limit his ability to fully enjoy daily life activities. However, after reviewing the record and the parties' briefs, I do not find that his arguments on appeal warrant a reversal of the ALJ's decision.

9

Accordingly, for the reasons described above, the Court affirms the Commissioner's decision denying Mr. Smith's application for SSI.

DATED this 16th day of December, 2021.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge